FILED
RICHARD W. NAGEL
CLERK OF COURT

2015 FEB -3 PM 3: 12

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. EAS 2:15 CR 27 BUS |
| | : | 18 U.S.C. §2 |
| vs. | : | 18 U.S.C. §1035 |
| | : | 18 U.S.C. §1347 |
| JOANNA OCHIENG | : | 18 U.S.C. §1349 |
| | : | 18 U.S.C. §1956 |
| | | 18 U.S.C. §1957 |
| | | 26 U.S.C. §7206(1) |
| | | FORFEITURES 18 U.S.C. §982 |

**UNDER SEAL**

## INDICTMENT

THE GRAND JURY CHARGES:        JUDGE FROST

### COUNT 1
### FILING A FALSE PARTNERSHIP RETURN
[26 U.S.C. §7206(1)]

On or about the 10th day of January, 2011, Defendant JOANNA OCHIENG of Columbus, Ohio, who owned and operated Healthy Solutions Home Health Services LLC (hereinafter HSHHS), which provided home health services in the Southern District of Ohio, did willfully make and subscribe a Form 1065, U.S. Return of Partnership Income, for the year 2006 which was verified by a written declaration that it was made under the penalties of perjury and which was filed with the Director, Internal Revenue Service Center at Covington, Kentucky, which the said Defendant JOANNA OCHIENG did not believe to be true and correct as to every material matter in that line 1c of the said Form 1065 showed gross receipts in the amount of $343,968, whereas, as Defendant JOANNA OCHIENG then and there well knew and believed, the gross receipts for HSHHS for 2006 were under-reported by $536,838.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT 2
### FILING A FALSE PARTNERSHIP RETURN
### [26 U.S.C. §7206(1)]

On or about the 10th day of January, 2011, Defendant JOANNA OCHIENG of Columbus, Ohio, who owned and operated HSHHS which provided home health services in the Southern District of Ohio, did willfully make and subscribe a Form 1065, U.S. Return of Partnership Income, for the year 2007 which was verified by a written declaration that it was made under the penalties of perjury and which was filed with the Director, Internal Revenue Service Center at Covington, Kentucky, which the said Defendant JOANNA OCHIENG did not believe to be true and correct as to every material matter in that line 1c of the said Form 1065 showed gross receipts in the amount of $102,873, whereas, as Defendant JOANNA OCHIENG then and there well knew and believed, the gross receipts for HSHHS for 2007 were under-reported by $493,978.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT 3
### FILING A FALSE PARTNERSHIP RETURN
### [26 U.S.C. §7206(1)]

On or about the 10th day of January, 2011, Defendant JOANNA OCHIENG of Columbus, Ohio, who owned and operated HSHHS which provided home health services in the Southern District of Ohio, did willfully make and subscribe a Form 1065, U.S. Return of Partnership Income, for the year 2008 which was verified by a written declaration that it was made under the penalties of perjury and which was filed with the Director, Internal Revenue Service Center at Covington, Kentucky, which the said Defendant JOANNA OCHIENG did not believe to be true and correct as to every material matter in that line 1c of the said Form 1065 showed gross receipts in the amount of $414,792, whereas, as Defendant JOANNA OCHIENG

then and there well knew and believed, the gross receipts for HSHHS for 2008 were under-reported by $20,920.

In violation of Title 26, United States Code, Section 7206(1).

### COUNT 4
FILING A FALSE PARTNERSHIP RETURN
[26 U.S.C. §7206(1)]

On or about the 10th day of January, 2011, Defendant JOANNA OCHIENG of Columbus, Ohio, who owned and operated HSHHS which provided home health services in the Southern District of Ohio, did willfully make and subscribe a Form 1065, U.S. Return of Partnership Income, for the year 2009 which was verified by a written declaration that it was made under the penalties of perjury and which was filed with the Director, Internal Revenue Service Center at Covington, Kentucky, which the said Defendant JOANNA OCHIENG did not believe to be true and correct as to every material matter in that line 1c of the said Form 1065 showed gross receipts in the amount of $693,168, whereas, as Defendant JOANNA OCHIENG then and there well knew and believed, the gross receipts for HSHHS for 2009 were under-reported by $185,693.

In violation of Title 26, United States Code, Section 7206(1).

### COUNT 5
FILING A FALSE PARTNERSHIP RETURN
[26 U.S.C. §7206(1)]

On or about the 29th day of February, 2012, Defendant JOANNA OCHIENG of Columbus, Ohio, who owned and operated HSHHS which provided home health services in the Southern District of Ohio, did willfully make and subscribe a Form 1065, U.S. Return of Partnership Income, for the year 2010 which was verified by a written declaration that it was

made under the penalties of perjury and which was filed with the Internal Revenue Service in Columbus, Ohio, which the said Defendant JOANNA OCHIENG did not believe to be true and correct as to every material matter in that line 1c of the said Form 1065 showed gross receipts in the amount of $778,221, whereas, as Defendant JOANNA OCHIENG then and there well knew and believed, the gross receipts for HSHHS for 2010 were under-reported by $287,228.

In violation of Title 26, United States Code, Section 7206(1).

## INTRODUCTION FOR COUNTS 6 THROUGH 27

At all relevant times relating to Counts 6 through 27 of this Indictment, unless otherwise alleged:

1. Defendant JOANNA OCHIENG was the owner of HSHHS which provided nursing and home health services to Medicaid recipients and their families.

2. HSHHS operated out of several locations including, but not limited to, the following, all located within the Southern District of Ohio:

   a. 3731 E. Broad Street, Suite 121, Columbus, Ohio 43213;

   b. 385 E. Innis Ave., Columbus, Ohio 43207;

   c. 2691 E. Main Street, Suite 102, Bexley, Ohio 43209;

   d. 1325 Justin Junction, Washington Courthouse, Ohio 43160;

   e. 757 West Elm Street, Washington Courthouse, Ohio 43160; and

   f. 938 West Main Street, Hillsboro, Ohio 45133.

3. On April 17, 2003, Defendant JOANNA OCHIENG was listed as the Agent on articles of incorporation filed with the Ohio Secretary of State incorporating Healthy Solutions Home Health Services L.L.C. and listed a business address of 3731 E. Broad Street, Suite 121, Columbus, Ohio 43213.

4. On or about March 1, 2012, an exact date unknown, HSHHS began operating at 757 West Elm Street, Washington Courthouse, Ohio 43160.

5. On July 12, 2013, Defendant JOANNA OCHIENG filed articles of incorporation with the Ohio Secretary of State incorporating Healthy Solutions Home Health Services Inc. and listed a business address of 5918 Sharon Woods Blvd., #208, Columbus, Ohio 43229.

6. As the owner of HSHHS, Defendant JOANNA OCHIENG entered into Agreements with the Ohio Medicaid Program (Medicaid). These agreements allowed Defendant JOANNA OCHIENG to bill for items and services rendered by HSHHS to Medicaid customers.

7. HSHHS entered a provider agreement with Medicaid. Provider number 2502750 was assigned to HSHHS effective on or about June 22, 2004. OCHIENG signed the provider agreement as the administrator of HSHHS.

I. The Victim Health Insurance Program

8. The information provided in this section describes the victim, the health insurance program (See "Attachment A" which is incorporated into this Indictment and serves as the Fed. R. Crim. P. 12.4 Disclosure Statement).

II. The Medicaid Program

9. Medicaid, established by Congress in 1965, provided medical insurance coverage for individuals whose incomes are too low to meet the costs of necessary medical services. Approximately 60% of the funding for Ohio's Medicaid program came from the federal government. The Ohio Department of Medicaid (ODM), Columbus, Ohio, managed the Medicaid program, which was managed previously by the Ohio Department of Job and Family Services (ODJFS). ODM, formerly ODJFS, received, reviewed, and obtained formal authority to make payment of Medicaid claims submitted to it by providers of health care.

10. The Office of Budget and Management (OBM) would then issue the check or electronic fund transfer (EFT) from 30 East Broad Street, Columbus, Ohio 43215. Each qualified Medicaid patient received a Recipient Identification Number to identify the patient as an authorized recipient of Medicaid benefits. Pursuant to the rules and regulations of the Ohio Medicaid Program, including Medicaid MCO's. Medicaid only paid for services that were actually performed by qualified individuals and medically necessary for the patient's health.

11. Medicaid was a health care benefit program, as is defined in 18 U.S.C. §24.

### III. Home Health Services

12. The Ohio Medicaid Program paid for home health care under a Fee for Service (FFS) system which was a traditional billing and reimbursement method in which providers charge for each medical service or unit provided to a patient.

13. Home health skilled nursing services must have been provided by a registered nurse (RN), or a licensed practical nurse (LPN) under the supervision of a RN. Nursing services were typically recorded in documents commonly referred to as "nursing notes." These documents recorded the dates, times and nature of the services provided by the nurse.

14. Home health nursing services must have been provided, performed within the nurses scope of practice, and documented in accordance with the consumer's plan of care. It was also required for services to have been provided in a face-to-face encounter, been medically necessary and provided in accordance with Federal and State laws rules and regulations, including anti-kickback laws. Medical services were not covered when the visit was solely for the supervision of the home health aide, but could have included infusion therapy for the administration of medications, nutrients or other solutions.

15. Home health aide services must have been performed by a home health aide employed or contracted by the agency providing the service. The home health aide could not have been the parent, step-parent, foster parent, or legal guardian of a consumer (patient) who was under eighteen (18) years of age, or the consumer's spouse. Home health aide service were typically recorded in documents commonly referred to as "time sheets."

16. Home health aide services must have been provided and documented in accordance with the consumer's plan of care, provided in a face-to-face encounter, been medically necessary to care for the consumer's illness or injury, been necessary to facilitate the nurse or therapist in the care of the consumer's illness or injury or helped the consumer maintain a certain level of health in order to remain in the home setting, and must have been provided in accordance with Federal and State laws, rules and regulations, including anti-kickback laws.

17. Home health related services could have included, but was not necessarily limited to, bathing, dressing, grooming, hygiene, including shaving, skin care, foot care, ear care, hair, nail and oral care, that were needed to facilitate care or prevent deterioration of the consumer's health, and included changing bed linens of an incontinent or immobile consumer.

　　　　IV.　Health Care Reimbursements

18. Providers who provided services to Medicaid patients used a number assigned to the patient to fill out claim forms. The claim form was submitted by the provider to make claims for payments from Medicaid. Medicaid processed each health insurance claim form and issued a check to the provider for the approved services. Providers could have submitted the claim forms in paper format, or by electronic means.

19. Health care claim forms, both paper and electronic, contained certain patient information and treatment billing codes. The treatment billing codes described various medical

services in the language the providers themselves used. Health care programs had established payment schedules based on the codes billed by the provider. By designating a certain code, the provider certified to the health care program that a given treatment was actually rendered in compliance with the code requirements and was medically necessary. These treatment billing codes were well known to the medical community, providers, and health care insurance companies.

20. Medicaid used the written claim forms and or electronic invoices to establish the validity of health care claims entitled to payment. A provider who submitted a claim to Medicaid certified that the treatment was actually given to the patient as documented and was medically necessary for the health of the patient.

## COUNT 6
### CONSPIRACY TO COMMIT HEALTH CARE FRAUD
### [18 U.S.C. §1349]

21. The immediately preceding numbered paragraphs 1 through 20 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

22. From on or about November 17, 2011, and continuing through on or about March 27, 2013, in the Southern District of Ohio, Defendant JOANNA OCHIENG did knowingly and willfully combine, conspire, confederate and agree with others, both known and unknown to the Grand Jury, to violate 18 U.S.C. §1347, that is, to execute a scheme to defraud a health care benefit program as defined in 18 U.S.C. §24(b), that is Ohio Medicaid, in connection with the delivery or payment for health care benefits, items or services.

### Purpose of the Conspiracy

23. It was the purpose of the conspiracy for Defendant JOANNA OCHIENG and co-conspirators to unlawfully enrich themselves by 1) billing, or causing bills to be submitted, for home health care that was provided by parents to their own minor children in violation of the law; and, 2) unbundling services by falsely splitting-up nursing visits and billing, or causing bills to be submitted, for extra hours in order to maximize reimbursement and perpetuate the health care fraud scheme.

### Manner and Means

24. It was part of the conspiracy that Defendant JOANNA OCHIENG and co-conspirators would instruct parents whose children were receiving home health care services to "swap" time sheets with other parents who were providing home health care services to their own children. It was part of the scheme that by swapping time sheets it would give the false appearance that parents were providing home health services to children other than their own.

25. It was further part of the conspiracy that Defendant JOANNA OCHIENG or co-conspirators, at the direction of Defendant JOANNA OCHIENG, would bill health care benefit programs knowing that it was illegal to bill for care that parents provided to their own minor children.

26. It was further part of the conspiracy that Defendant JOANNA OCHIENG or co-conspirators, at the direction of Defendant JOANNA OCHIENG, would inflate the hours of care permitted on consumer plans of care, and would encourage doctors to sign off on these inflated hours without making a determination of medical necessity.

27. It was further part of the conspiracy that Defendant JOANNA OCHIENG or co-conspirators, at the direction of Defendant JOANNA OCHIENG, would instruct HSHHS nurses

to submit Skilled Nursing Visit Notes that falsely inflated the number of hours that nurses were providing home health services.

28. It was further part of the conspiracy that Defendant JOANNA OCHIENG or co-conspirators, at the direction of Defendant JOANNA OCHIENG, would bill health care benefit programs knowing that it was illegal to bill for splitting-up shifts when the services were not provided in that manner.

29. It was further part of the conspiracy that Defendant JOANNA OCHIENG or conspirators, at the direction of Defendant JOANNA OCHIENG, allowed claims for these fraudulent services to be submitted to the Medicaid Program.

30. The total amount of fraudulent claims that Defendant JOANNA OCHIENG submitted or caused to be submitted to the Medicaid Program was over $400,000.

All in violation of 18 U.S.C. §1349.

## COUNT 7
### HEALTH CARE FRAUD SCHEME
[18 U.S.C. §1347 and §2]

31. Numbered paragraphs 1 through 20 and 23 through 30 are hereby incorporated by reference as part of this count as if fully set forth herein.

32. From on or about November 17, 2011, and continuing through on or about March 27, 2013, in the Southern District of Ohio, Defendant JOANNA OCHIENG, knowingly and willfully executed and attempted to execute a scheme or artifice to defraud a health benefit program, that is, the Ohio Medicaid Program, in connection with the delivery of, or payment for, health care benefits, items, or services.

All in violation of 18 U.S.C. §1347 and §2.

## COUNTS 8 - 27
HEALTH CARE FALSE STATEMENTS
[18 U.S.C §1035 and §2]

33. Numbered paragraphs 1 through 20 and 23 through 30 are realleged and incorporated by reference as though fully set forth herein.

34. On or about the dates listed below, in the Southern District of Ohio, Defendant JOANNA OCHIENG, knowingly, willfully and in connection with the payment for health care benefits, services or items involving a health care benefit program, that is Medicaid, falsified, concealed or covered up by trick or scheme a material fact, that is by submitting or causing bills to be submitted to the health care benefit programs for parents providing care to their own minor children and for billing for split nursing visits that were now performed, as follows:

| Count | Recipient | Service | Date of Service | Amount Paid | Date Paid | Fraud Scheme |
|---|---|---|---|---|---|---|
| 8 | O.W. | Home Health Aide | 8/26/2012 | $59.26 | 9/12/2012 | Parents providing care to own child |
| 9 | O.W. | Home Health Aide | 3/4/2013 | $59.26 | 3/20/2013 | Parents providing care to own child |
| 10 | D.D. | Home Health Aide | 8/26/2012 | $59.26 | 9/12/2012 | Parents providing care to own child |
| 11 | D.D. | Home Health Aide | 3/4/2013 | $59.26 | 3/20/2013 | Parents providing care to own child |
| 12 | J.C. | Home Health Aide | 8/28/2012 | $59.26 | 9/12/2012 | Parents providing care to own child |
| 13 | J.C. | Home Health Aide | 3/6/2013 | $59.26 | 3/20/2013 | Parents providing care to own child |
| 14 | H.H. | Home Health Aide | 8/28/2012 | $59.26 | 9/12/2012 | Parents providing care to own child |
| 15 | H.H. | Home Health Aide | 3/6/2013 | $59.26 | 3/20/2013 | Parents providing care to own child |

| 16 | J.B. | Home Health Aide | 9/3/2012 | $59.26 | 9/19/2012 | Parents providing care to own child |
|----|------|------------------|----------|--------|-----------|-------------------------------------|
| 17 | S.L. | Home Health Aide | 9/3/2012 | $59.26 | 9/19/2012 | Parents providing care to own child |
| 18 | N.B. | Nursing | 11/5/2012 | $52.20 | 11/21/2012 | Splitting shifts |
| 19 | N.B. | Nursing | 2/6/2013 | $52.20 | 2/20/2013 | Splitting shifts |
| 20 | L.E. | Nursing | 11/5/2012 | $52.20 | 11/21/2012 | Splitting shifts |
| 21 | L.E. | Nursing | 2/6/2013 | $52.20 | 2/20/2013 | Splitting shifts |
| 22 | M.E. | Nursing | 11/5/2012 | $52.20 | 11/21/2012 | Splitting shifts |
| 23 | M.E. | Nursing | 2/19/2013 | $52.20 | 3/6/2013 | Splitting shifts |
| 24 | J.B. | Nursing | 8/8/2012 | $52.20 | 8/22/2012 | Splitting shifts |
| 25 | J.B. | Nursing | 11/16/2012 | $52.20 | 11/28/2012 | Splitting shifts |
| 26 | R.M. | Nursing | 10/10/2012 | $52.20 | 10/24/2012 | Splitting shifts |
| 27 | R.M. | Nursing | 1/9/2013 | $52.20 | 2/6/2013 | Splitting shifts |

Each in violation of 18 U.S.C. §1035 and §2.

## COUNT 28
## MONEY LAUNDERING
## [18 U.S.C 1956 (a)(2)(B)(i)]

On or about February 28, 2013, in the Southern District of Ohio, Defendant JOANNA OCHIENG did transmit, transfer and attempt to transmit, transfer monetary instruments or funds, to wit: six hundred thousand U.S. dollars ($600,000.00) from a place in the United States to or through a place outside the United States, to wit: Turks and Caicos, knowing that the monetary instruments, funds involved in the transportation, transmission, or transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity to wit: health care fraud.

In violation of Title 18, U.S.C. §1956(a)(2)(B)(i).

## COUNT 29
MONEY LAUNDERING
[18 U.S.C §1956 (a)(2)(B)(i)]

On or about March 13, 2013, in the Southern District of Ohio, Defendant JOANNA OCHIENG did transmit, transfer and attempt to transmit, transfer monetary instruments or funds, to wit: four hundred ten thousand U.S. dollars ($410,000.00) from a place in the United States to or through a place outside the United States, to wit: Turks and Caicos, knowing that the monetary instruments, funds involved in the transportation, transmission, or transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity to wit: health care fraud.

In violation of Title 18 U.S.C. §1956(a)(2)(B)(i).

## COUNT 30
MONEY LAUNDERING
[18 U.S.C. §1957(a)]

On or about February 28, 2013, in the Southern District of Ohio, Defendant JOANNA OCHIENG, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, to wit: $600,000 of U.S. currency, such property having been derived from a specified unlawful activity, to wit: health care fraud.

In violation of Title 18 U.S.C. §1957 and §2.

13

## FORFEITURE A
[18 U.S.C. §982(a)(1)]

The allegations of Counts 28, 29, and 30 are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to 18 U.S.C. §982(a)(1).

Upon conviction of any of the violations as alleged in Count 28, Count 29 and Count 30 of the Indictment, the Defendant JOANNA OCHIENG, shall forfeit to the United States under 18 U.S.C. §982(a)(1) any property real or personal, involved in a transaction or attempted transaction or offense in violation of 18 U.S.C. §§1956 and 1957 or conspiracy to commit such offenses, for which the defendant is convicted, and all property traceable to such property, including but not limited to the following:

> All of the funds on deposit at the Turks and Caicos Banking Company, Ltd., held in the segregated Trust Account Number 535100 of McCollum and Newlands for Splenda Holdings Ltd., for the benefit of Joanna Ochieng, containing approximately $1,000,000.00.

All in accordance with Title 18, United States Code, §982(a)(1) and Rule 32.2(a), Federal Rules of Criminal Procedure.

## FORFEITURE B
[18 U.S.C. §982(a)(7) / 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c)]

The allegations of Counts 6 through 27 are realleged and by this reference fully incorporated herein for the purpose of alleging to the United States of America pursuant to 18 U.S.C. §982(a)(7) and 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c).

Upon conviction of any of the violations as alleged in Counts 6 through 27 of the Indictment, the Defendant JOANNA OCHIENG, shall forfeit to the United States under 18 U.S.C. §982(a)(7) and 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c) any property real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense(s) alleged in Counts 6 through 27, including but not limited to a sum of money equal to $436,305.69 in United States Currency which represents the proceeds acquired as a result of the offenses as outlined in Counts 6 through 27 of the Indictment in the form of a forfeiture money judgment.

### Substitute Assets

If any of the above-described forfeitable property in Forfeiture B, as a result of any act or omission of the Defendant, JOANNA OCHIENG,

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. §853(p) as incorporated by 18 U.S.C. §982(b)(1), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above, that is $436,305.69. All in accordance with Title 18, United States Code, §982(a)(7); 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c) and Rule 32.2, Federal Rules of Criminal Procedure.

A TRUE BILL.

S/Foreperson  CAD
FOREPERSON

CARTER M. STEWART
UNITED STATES ATTORNEY

/BRENDA S. SHOEMAKER
Financial Crimes Chief

Attachment A

# VICTIM HEALTH CARE PROGRAM

Fed.R.Crim.P. 12.4 Disclosure Statement

### The Medicaid program

The Ohio Department of Medicaid
50 West Town Street, Suite 400
Columbus, Ohio 43215

Medicaid, established by Congress in 1965, provides medical insurance coverage for individuals whose incomes are too low to meet the costs of necessary medical services. Approximately 60% of the funding for Ohio's Medicaid program comes from the federal government. The Ohio Department of Medicaid (ODM), Columbus, Ohio, manages the Medicaid program, which was managed previously by the Ohio Department of Job and Family Services (ODJFS). ODM, formerly ODJFS, receives, reviews, and obtains formal authority to make payment of Medicaid claims submitted to it by providers of health care benefits, items or services.

Medicaid also contracts with private health insurance companies to provide coverage for its recipients. Such companies include, but are not limited to, CareSource, Molina HealthCare of Ohio, Inc., Buckeye Health Plan, United Healthcare and Paramount Advantage.